J-S69002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B. AND K.B., MINORS | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M., MOTHER | : | No. 1123 EDA 2015 |

Appeal from the Orders March 17, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002176-2014;
CP-51-DP-0002177-2014

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                     **FILED DECEMBER 08, 2015**

Appellant, A.M. ("Mother"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, which found aggravated circumstances and reasonable efforts were no longer required of the Department of Human Services ("DHS") to reunify Mother with C.B. and K.B. ("Children"). We affirm.

The trial court's opinion sets forth the relevant facts and procedural history of this case as follows:

> On September 11, 2014, DHS received a Child Protective Services ("CPS") report alleging that [C.B.] had swelling of her whole face, both lips and a large lump on her forehead. [K.B.] had a bruise on the right side of his face. The report also alleged that Children reside in a shelter with their Mother at Mercy Hospice Recovery for [Women], and that Mother had substance abuse issues. The police were called to Mercy Hospice due to [C.B.]'s injuries. Mother stated that she put both Children in bed at approximately 7:30 P.M. Later that evening, Mother went back upstairs to check on the Children and returned downstairs with [C.B.] in her arms, screaming at a

resident. Another resident at the recovery home came downstairs with [K.B.]. [K.B.]'s face was swollen on the right side. Mother stated that the Children must be allergic to something. Paramedics and the police were called. Mother and Children were transported to Children's Hospital of Philadelphia ("CHOP"). The conditions of the Children did not coincide with Mother's explanation. As a result CHOP's medical staff suspected that this was a case of physical child abuse. Children were then admitted into the hospital. The paramedics touched [K.B.]'s face and he began to cry. On September 12, 2014, DHS received a supplement report to the September 11, 2014 report alleging that [K.B.] had a broken femur. Mother stated that the abuse was at the hands of an unknown perpetrator. On the same day, DHS went to CHOP and the Children's father was present with a CHOP social worker. The CHOP social worker and doctor confirmed that the injuries to [C.B.] and [K.B.] were non-accidental injuries. Children's father stated that he was concerned that someone from the shelter had hurt his Children and he did not believe that Mother was the perpetrator of the abuse. DHS went to father's home and completed a successful home assessment. DHS learned that father resided with the Children's paternal grandmother. Mother agreed to ask father to obtain alternate housing for himself in order for the Children to reside in grandmother's home. DHS was unable to clear grandmother's house due to her husband's criminal history. The home was appropriate, but there was some concerns that father would not comply with a safety plan because he did not believe that Mother was the perpetrator of abuse. DHS visited Mother at a shelter. Mother stated that when she left the room, someone must have come inside and hurt her Children. Mother also stated that she had a baby monitor. However, she did not hear the Children crying, and when she returned to the room the Children were injured.

On September 15, 2014, DHS obtained an Order for Protective Custody ("OPC") for Children. On September 17, 2014, at a Shelter Care hearing, the trial court lifted the OPC and ordered the temporary commitment to stand. The adjudicatory hearing was scheduled for September 24, 2014. On September 24, 2014, the trial court

deferred Children's adjudication hearing for December 9, 2014. On December 9, 2014, the trial court granted a continuance request and again deferred the adjudicatory hearing for March 17, 2015. On March 17, 2015, the parties agreed to adjudicate the hearing, DHS requested a finding of aggravated circumstances and child abuse also. The trial court accepted [the] parties' agreement, and also found aggravated circumstances and child abuse in regard to Mother. The Children were placed in foster care…. Counsel for Mother filed a notice of appeal on [April 14, 2015,] only as to the finding of child abuse and aggravated circumstances against Mother.

(Trial Court Opinion, filed July 10, 2015, at 1-2) (citations to record omitted). On April 14, 2015, Mother also timely filed a contemporaneous statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).[1]

Mother raises the following issues for our review:

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN MAKING A FINDING OF CHILD ABUSE REGARDING [MOTHER]?

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN MAKING A FINDING THAT [MOTHER] WAS A PERPETRATOR BY OMISSION?

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN MAKING A FINDING OF AGGRAVATED CIRCUMSTANCES REGARDING [MOTHER]?

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE

---

[1] We observe that it was improper for Mother to file a single notice of appeal and statement of errors complained on appeal from separate orders for C.B. and K.B., which found the presence of aggravated circumstances and that reasonable efforts were unnecessary. *See* Pa.R.A.P. 341 (providing that where more than one order resolves issues arising on more than one docket, or relating to more than one judgment, separate notices of appeal are required). Nevertheless, we decline to reject Mother's appeal on this basis.

ERROR IN MAKING A FINDING OF NO REASONABLE EFFORTS REQUIRED TO REUNITE [MOTHER] WITH [HER CHILDREN]?

(Mother's Brief at 4).

In Mother's issues combined, she argues the findings on aggravated circumstances and reasonable efforts were in error. Mother admits the record demonstrated clear and convincing evidence that Children suffered abuse, but she contends the error lies in the court's finding that she had abused Children by omission where the evidence was insufficient to support the finding. Mother alleges she presented rebuttable evidence to refute the presumption that she abused Children. Mother avers the court imposed an impossible standard that required her to protect Children from unknown harms at all times. Additionally, Mother insists that founded cases of child abuse or neglect do not necessarily constitute cases of aggravated circumstances. Mother contends the court based its finding of aggravated circumstances solely on the grounds that Children suffered abuse and Mother was the primary caregiver. Mother maintains the court abused its discretion in finding the presence of aggravated circumstances, which permitted the court to terminate any reasonable efforts necessary to reunify Mother with Children. Mother concludes this Court should reverse the court's orders regarding aggravated circumstances and reasonable efforts. We disagree.

The applicable scope and standard of review for dependency cases is

as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inference or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

The previous version of the Child Protective Services Law[2] defined "child abuse," in relevant part, as follows:

### § 6303.  Definitions

**(b)   Child abuse.**—

(1)   The term "child abuse" shall mean any of the following:

(i)   Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

\* \* \*

(iii)  Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iv)   Serious physical neglect by a perpetrator constituting prolonged or repeated lack of

---

[2] Section 6303 was amended, effective December 31, 2014, and now includes a revised definition of "child abuse." **See** 23 Pa.C.S.A § 6303(b.1). Because Children's injuries occurred prior to the effective date of the amendment, we apply the previous version of Section 6303.

- 5 -

supervision or the failure to provide essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

23 Pa.C.S.A. § 6303(b)(1)(i), (iii)-(iv).

The existence of "child abuse" pursuant to Section 6303(b)(1) must be proven by clear and convincing evidence. ***In re L.Z.***, ___ Pa. ___, 111 A.3d 1164, 1174 (2015). Under certain circumstance, however, the identity of an abuser may be established by *prima facie* evidence. ***Id***. ***See also In re L.V.***, ___A.3d ___, 2015 PA Super 234 (filed November 12, 2015).

[E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

***In re L.Z., supra*** at ___, 111 A.3d at 1185 (internal footnote omitted).

Significantly, courts do not require a parent's physical presence during the injury for "abuse" to occur. ***Id***. at ___, 111 A.3d at 1184. To the contrary, our Supreme Court has stated, "parents are always responsible for their children, absent extenuating circumstances…." ***Id.*** Moreover, "[t]he inclusion of 'omissions' encompasses situations where the parent or

responsible person is not present at the time of the injury but is nonetheless responsible due to his or her failure to provide protection for the child." *Id*.

Furthermore, the Juvenile Act provides, in relevant part:

> **§ 6302. Definitions**
>
> The following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:
>
> **"Aggravated circumstances."** Any of the following circumstances:
>
> \* \* \*
>
> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.
>
> \* \* \*
>
> **"Aggravated physical neglect."** Any omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning.

42 Pa.C.S.A. § 6302. "The court need not find the existence of aggravated circumstances as to a particular party; rather it merely must determine whether [those circumstances] are present in the case." *In re R.P.*, 957 A.2d 1205, 1219 (Pa.Super. 2008). "If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether...reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made...." 42 Pa.C.S.A. § 6341(c.1).

Nevertheless, a court may end reasonable efforts at its discretion. ***In re A.H.***, 763 A.2d 873, 878 (Pa.Super. 2000).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph Fernandes, we conclude Mother's issues merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. (***See*** Trial Court Opinion at 4-8) (finding: **(1)** and **(3)** at time of injuries, C.B. was one year old, and K.B. was five months old; C.B. sustained several injuries, including bruising to her face, forehead, right ear, and back waistline, swelling and abrasion of her upper lip, and blood in her nose as result of trauma; testimony of Dr. Parking-Joseph, Children's treating physician, established that C.B.'s injuries caused her severe pain and restricted her ability to eat and speak; K.B. sustained several injuries, including bruising down left side of his face and ear, and skeletal fracture of his right femur; doctors found additional fracture to K.B.'s right tibia, which they believed healed with no treatment; Dr. Parking-Joseph's testimony established that K.B. was in severe pain during treatment and will likely have some residual pain in future as result of skeletal fractures; Children's treating physicians determined that injuries to Children resulted from non-accidental trauma; other possible causes of Children's injuries were ruled out, such as medical deficiencies, allergic reaction, or self-infliction of their own injuries; Dr. Parking-Joseph's testimony established that K.B.'s skeletal

fractures were result of shaking, flailing, pulling, or yanking at his extremities, and Children did not possess strength necessary to cause such injuries to themselves or each other; Mother was primary caregiver when injuries occurred; Mother admitted she left Children alone in bedroom, and used monitor that was out of range; Mother was gone for 38 minutes while Children were alone in room; Mother was unable to explain her whereabouts during 38 minutes; Mother claimed she returned to room and noticed bruises on C.B.'s face and assumed it was allergic reaction; no one else was responsible for Children's injuries and Mother was exclusive caregiver when injuries occurred; **(2)** Dr. Parking-Joseph's testimony established Children were in severe pain during medical examination; both Children required Tylenol and Motrin to palliate their pain; Children were victims of physical abuse that resulted in injuries which caused severe pain and temporarily impaired Children's physical functions; **(4)** existence of aggravated circumstances; record established Mother was primary caregiver for Children; Mother admitted leaving Children alone and using out-of-range monitor; without Mother's omission in her duty to care for Children, Children's injuries would not have occurred; Mother's lack of awareness of her omission and conduct in caring for Children demonstrated that returning Children to Mother's care would put Children's physical integrity at risk). Accordingly, we affirm on the basis of the trial court's opinion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2015

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In Re: C.B.                                   : CP-51-DP-0002176-2014
        K.B.                                   : CP-51-DP-0002177-2014

APPEAL OF: A.M., Mother            : 1123 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant, A.M. ("Mother"), appeals from the orders entered on March 17, 2015, finding that child abuse and aggravated circumstances existed and reasonable efforts need not be made by the Department of Human Services to reunify C.B. ("Child 1") and K.B. ("Child 2") (collectively "Children") with their Mother pursuant to 42 Pa.C.S. § 6302. Marie Regine Charles-Asar, Esquire, counsel for Mother, filed a notice of appeal with a Statement of Errors Complained Of pursuant to Rule 1925 (b).

**Factual and Procedural Background**

On September 11, 2014, DHS received a Child Protective Services ("CPS") report alleging that Child 1 had swelling of her whole face, both lips and a large lump on her forehead. Child 2 had a bruise on the right side of his face. The report also alleged that Children reside in a shelter with their Mother at Mercy Hospice Recovery for Woman, and that Mother had substance abuse issues. The police were called to Mercy Hospice due to Child 1's injuries. Mother stated that she put both Children in bed at approximately 7:30 P.M. Later that evening, Mother went back upstairs to check on the Children and returned downstairs with Child 1 in her arms, screaming at a resident. Another resident at the recovery home came downstairs with Child 2. Child 2's face was swollen on the right side. Mother stated that the Children must be allergic to something. Paramedics and the police were called. Mother and Children were transported to Children's Hospital of Philadelphia ("CHOP"). The conditions of the Children did not coincide with Mother's explanation. As a result CHOP's medical staff suspected that this was a case of physical child abuse. Children were then admitted into the hospital. The paramedics touched Child 2's face and he began to cry. On

September 12, 2014, DHS received a supplement report to the September 11, 2014 report alleging that Child 2 had a broken femur. Mother stated that the abuse was at the hands of an unknown perpetrator. On the same day, DHS went to CHOP and the Children's father was present with a CHOP social worker. The CHOP social worker and doctor confirmed that the injuries to Child 1 and Child 2 were non-accidental injuries. Children's father stated that he was concerned that someone from the shelter had hurt his Children and he did not believe the Mother was the perpetrator of the abuse. DHS went to father's home and completed a successful home assessment. DHS learned that father resided with the Children's paternal grandmother. Mother agreed to ask father to obtain alternate housing for himself in order for the Children to reside in grandmother's home. DHS was unable to clear grandmother's house due to her husband's criminal history. The home was appropriate, but there was some concerns that father would not comply with a safety plan because he did not believe that Mother was the perpetrator of abuse. DHS visited Mother at a shelter. Mother stated that when she left the room, someone must have come inside and hurt her Children. Mother also stated that she had a baby monitor. However, she did not hear the Children crying, and when she returned to the room the Children were injured.

On September 14, 2014, DHS obtained an Order for Protective Custody ("OPC") for Children. On September 17, 2014, at a Shelter Care hearing, the trial court lifted the OPC and ordered the temporary commitment to stand. The adjudicatory hearing was scheduled for September 24, 2014. On September 24, 2014, the trial court deferred Children's adjudication hearing for December 9, 2014. On December 9, 2014, the trial court granted a continuance request and again deferred the adjudicatory hearing for March 17, 2015. On March 17, 2015, the parties agreed to adjudicate the Children dependent based on present inability. (N.T. 3/17/15, pgs. 7-8). During the adjudicatory hearing, DHS requested a finding of aggravated circumstances and child abuse also. (N.T. 3/17/15, pgs. 7,105). The trial court accepted parties' agreement (N.T. 3/17/15, pg. 113), and also found aggravated circumstances and child abuse in regard to Mother. The Children were placed in foster care through Bethanna. Counsel for Mother filed a notice of appeal on May 21, 2015 only as to the finding of child abuse and aggravated circumstances against Mother.

**Discussion:**

On appeal, Mother raises the following issues:

1. The trial court committed reversible error in finding that appellant was a perpetrator by omission due to the fact that Mother was the primary caregiver.

2. The trial court committed reversible error in finding aggravated circumstances regarding appellant.

3. The trial court committed reversible error in finding evidence of Child abuse regarding the appellant.

4. The trial court committed reversible error in finding no reasonable efforts were required to reunite the appellant with her Children.

For purposes of this appeal issue # 1 and # 3 will be consolidated into one main issue. The other two issues will be treated as stated by the appellant.

Mother's first issue on appeal argues the trial court erred in determining that Children were victims of Child abuse regarding Children's Mother. The Child Protective Services Law ("CPSL") 23. C.S.A. §6303 (b) (i) establishes that any recent act or failure to act by a perpetrator which causes non-accidental serious physical injury to a child under 18 years old constitutes child abuse. A serious injury under CPSL 23. C.S.A. §6303 (a) is defined as that injury that causes severe pain or that significantly impairs a child's physical functioning either temporally or permanently. The record must show by clear and convincing evidence that the child suffered abuse as defined by the CPSL 23. C.S.A. §6303 (b). *In the Matter of L.Z*, 111 A.3d 1164 (Pa. 2015). As to the identity of the perpetrator of Child abuse, the trial court is required to find perpetrator's identity by prima facie standard. *In interest of J.R.W.*, 631 A.2d 1019, 1023-1024 (Pa. Super. 1993). CPSL 23. C.S.A. §6303 (d) establishes that evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of acts or omission of the parent or other person responsible for the welfare of the child, shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare child. This rule created an evidentiary presumption against the child's caregiver at the time of the abuse. *In re JG.*, 984 A.2d 541,547 (Pa. Super.2009). Thus, proof of the nature of the child's harm, alone, is prima facie evidence of child abuse by anyone who are found to be responsible for the welfare of the child at the time of the alleged injuries. *In re JG.*, 984 A.2d 541,547 (Pa. Super.2009), *In the Matter of L.Z*, 111 A.3d 1164 (Pa. 2015).

Dr. Carla Parking-Joseph's testimony established that Child 1 presented several bruises on her face. Child 1 first bruise was in the middle of Child 1 forehead and it extended to the right side of her hairline. (N.T. 3/17/15, pgs. 21-22, 45, 57-58). Child 1's forehead mark was the product of trauma. (N.T. 3/17/15, pg. 62). Child 1 second bruise was on her right ear (N.T. 3/17/15, pg. 45) and extended to the inner folds of Child 1 ear. (N.T. 3/17/15, pg. 45). A third bruise was noted on Child 1 back on the waistline. (N.T. 3/17/15, pg. 45). The medical examination also revealed a swelling area associated to the bruising, located in the middle of Child 1 forehead, a significant swelling of Child 1 upper lip (DHS Exhibit E), and an abrasion on her lips. (N.T. 3/17/15, pgs. 22, 45, 57, 59). Child 1 presented dried blood on her nose that, according to Dr. Carla Parking-Joseph, was the result of trauma. (DHS Exhibit E), (N.T. 3/17/15, pg. 59). Dr. Carla Parking-Joseph's testimony established that Child 1 injuries were able to produce severe pain and restrict Child 1 ability to eat and speak. (N.T. 3/17/15, pgs. 49, 58-59). During Child 1 medical evaluation, she was in severe pain. (N.T. 3/17/15, pgs. 47, 49, 58) and required Tylenol and Motrin to relieve her pain (N.T. 3/17/15, pg. 47).

As to Child 2 injuries, Dr. Parking-Joseph's testimony found that Child 2 had significant bruising on the left side of his face. (N.T. 3/17/15, pg. 45). Child 2's bruise extended down from his temple, down to his jawline and from the corner of his eye to his hairline. (N.T. 3/17/15, pg. 45-46). Child 2 also had a bruise on his ear. (N.T. 3/17/15, pg. 46). A skeletal survey identified a fracture on Child 2's right femur. (N.T. 3/17/15, pgs. 22, 46). An additional fracture was discovered on Child 2's right leg, specifically on his tibia (N.T. 3/17/15, pgs. 50, 60), which seems to have healed with no treatment. (N.T. 3/17/15, pg. 50). The record established that Child 2 was already taking medicine for his pain and a cast was already encased on his leg when Dr. Parking-Joseph's evaluation took place. (N.T. 3/17/15, pg. 47). Moreover, Dr. Parking-Joseph's testimony established that Child 2 suffered severe pain before setting the cast on his leg and needed pain medicine. (N.T. 3/17/15, pg. 47). Tylenol and Motrin were provided to palliate Child 2's pain (N.T. 3/17/15, pgs. 47-48). Child 2 has to remain with a cast between four and six weeks. (N.T. 3/17/15, pg. 63). In the future, Child 2 may have some residual pain. (N.T. 3/17/15, pg. 63).

In considering the nature of the Children injuries, Dr. Parking-Joseph determined that injuries resulted from a non-accidental trauma. (N.T. 3/17/15, pgs. 48, 52, 60, 62). Other possible causes of the injuries, such as Children's medical deficiencies, disease, any allergic reaction, and

birthmarks were ruled out. (N.T. 3/17/15, pg. 51-52, 62). In reference to Child 2 second fracture, the testimony established that there have been reported a number of mechanisms that could result in this type of fracture, such as shaking, flailing, pulling or yanking Child 2 at an extremity. (N.T. 3/17/15, pg. 51). Children's self-infliction of their own injuries was ruled out because they did not have the strength to cause the injuries. (N.T. 3/17/15, pgs. 48, 60, 77). At the time in which the Children were injured, on September 11, 2014, Child 1 was a one year-old and Child 2 was a five months old. (DHS Exhibit E). Accordingly, the trial court did have clear and convincing evidence to find the existence of Child abuse, as to Child 1 and Child 2, under CPLS 23. C.S. §6303 (b).

In relation to the identity of the abuser, the record established that Mother was Children's primary caregiver at the moment in which the injuries occurred (N.T. 3/17/15, pgs. 46, 51, 75, 80-81, 90). Mother was residing at Mercy Hospice Recovery for Woman with her Children at the time in which the Children were injured. (N.T. 3/17/15, pgs. 22, 69, 91, 104). Mother admitted that on September 11, 2014, she left the Children by themselves in the bedroom (N.T. 3/17/15, pg. 23), while she monitored the Children with an out of range monitor that did not allow her to hear her Children. (N.T. 3/17/15, pgs. 27, 28). The record established that Mother left Children's bedroom to obtain medication at approximately 7:30 P.M. (N.T. 3/17/15, pgs. 70, 83), and the Shelter's enter/exit record shows that Mother was out from 8:00 P.M. to 8:38 P.M. (N.T. 3/17/15, pgs. 26, 28-29). Mother stated that she was smoking a cigarette and she was in other areas within Mercy Hospice Recovery for Woman. (N.T. 3/17/15, pg. 23). Shelter's staff corroborated that Mother was seen receiving a snack in the dining area and that Mother went for cigarettes. (N.T. 3/17/15, pg. 83). Mother stated that she returned to her room after being downstairs and noticed the Children bruises. (N.T. 3/17/15, pg. 20). However, Mother did not provide an explanation for her location and actions from 8:00 P.M. to 8:38 P.M. (N.T. 3/17/15, pgs. 22, 24, 27, 29, 36). Instead, Mother focused in providing information about other possible perpetrators and stated the Mercy Hospice Recovery for Woman "was covering something up because they did not want to be sued". Mercy Hospice Recovery for Woman staff could not provide a complete timeline about Mother's actions. (N.T. 3/17/15, pg. 84). No one else was found to be responsible for Children injuries. (N.T. 3/17/15, pgs. 23, 24, 39). As Pennsylvania law requires, parents have a duty not merely to refrain from harming their children, but also a duty to protect the Children from others who may inflict harm. *In the Matter of L.Z,* 111 A.3d 1164 (Pa. 2015). The record established that Mother was Children's exclusive caregiver at the moment in which the injuries occurred. However, Mother

left the Children alone using inappropriate monitor. The Children would not ordinarily sustained these types of injuries but for Mother's omission. As a result, the record established prima facie evidence of child abuse as to the Mother, and the trial court did not heard competent evidence that rebutted such a presumption.

Under 42 Pa.C.S. § 6341 (C) (1), the trial court shall determine if aggravated circumstances exist, if the county agency or child's attorney request a finding of the existence of aggravated circumstances and there is an adjudication of dependency. Under 42 Pa.C.S. § 6302 (2), aggravated circumstances exist when the child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent. A serious injury under CPLS 23. C.S. §6303 (a) is defined as the injury that causes severe pain or that significantly injury impairs a child's physical functioning either temporally or permanently.

The record established that DHS filed a dependency petition under the Pennsylvania Juvenile Act 42 Pa.C.S. § 6301-6365, (See Dependency Petition), on September 18, 2014, and the parties agreed on Children dependency adjudication based on Mother's present inability. On March 17, 2015, at the adjudicatory hearing, the trial court accepted parties' agreement (N.T. 3/17/15, pgs. 7, 8, 113) and found the existence of aggravated circumstances. (N.T. 3/17/15, pgs. 115-116). On appeal Mother argues that the trial court abused its discretion in finding the existence of aggravated circumstances. Dr. Carla Parking-Joseph's testimony established Child 1's injuries were able to produce severe pain and restrict Child 1's ability to eat. (N.T. 3/17/15, pg. 49). During Child's medical evaluation, Child 1 appeared to be in severe pain (N.T. 3/17/15, pgs. 47, 49) and required Tylenol and Motrin to relieve her pain. (N.T. 3/17/15, pg. 47). As to Child 2, Dr. Parking-Joseph's testimony established that she evaluated Child 2 after taking medicine for his pain and encasing a cast on his leg. However, she testified that Child 2 had to suffer severe pain due to the type of injuries that he had. (N.T. 3/17/15, pg. 47). In fact, Child 2 also needed Tylenol and Motrin to palliate his pain (N.T. 3/17/15, pg. 47). The record also established that Mother was Children's primary caregiver (N.T. 3/17/15, pgs. 46, 75, 80-81), there was prima facie evidence of child abuse as to Mother, and Mother did not introduce any evidence to rebut such a presumption. The Children were victims of physical abuse that resulted in injuries that caused severe pain and temporarily impaired Children physical functions. As a result, DHS has met its burden by clear and convincing

evidence that aggravated circumstances existed due to Mother's abuse of her Children and the seriousness of their injuries.

Mother also argued that the trial court erred in finding that DHS does not have to make reasonable efforts, as the petitioner failed to prove the prerequisites finding of aggravated circumstances. Under 42 Pa.C.S. § 6341 (C) (1) if the county agency or the child's attorney request a finding of the existence of aggravated circumstances and the court determines by clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made. The Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, complies with the Adoption and Safe Families Act and provides the court with discretion to "determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made" when the court finds aggravated circumstances exist. *In the Interest of Lilley,* 719 A.2d 327, 333 (Pa.Super.1998) *In re A.H.,* 763 A.2d 873,878 (Pa. Super. 2000). The focus of the inquiry into whether to terminate efforts to reunify is in the best interest of the child. The child's health and safety supersede all other considerations. *In re R.P.,* 957 A.2d 1205, 1220 (Pa.Super.2008).

In Pennsylvania parents have a duty not merely to refrain from harming their children, but also a duty to protect their Children from others who may inflict harm. *In re R.W.J.,* 826A.2d 10, 14 (Pa. Super. 2003). The record clearly established that Mother was the Children primary caregiver and no other person had that responsibility. Mother admitted she left the Children alone in their bedroom at Mercy Hospice Recovery for Woman (N.T. 3/17/15, pgs. 20, 23) while she was unable to monitor the Children. (N.T. 3/17/15, pgs. 27, 28). Without Mother's omission in the care of her Children, the injuries would have not occurred. The period of time of Mother's absence and location is uncertain. Mother's version of the facts did not explain the thirty-eight minutes period in which her location is unknown (N.T. 3/17/15, pgs. 22, 24, 27, 29, 36), and Shelter staff could not provide a complete timeline about Mother's actions. (N.T. 3/17/15, pg. 84). During Children's injuries investigation, Mother focused more in providing information of others possible perpetrators and also stated that the shelter "was covering something up because they did not want to be sued". However, no one else was found to be responsible for the Children injuries. (N.T.

3/17/15, pgs. 23, 24, 39). Mother's absence from Children's bedroom without an appropriate monitor device and her lack of awareness of her omission, leads the trial court to consider that returning the Children to Mother's care would put Children's physical integrity at risk. (N.T. 3/17/15, pgs. 53-54). Consequently, it was within the trial court's discretion to order that no reasonable efforts to reunify Mother and Children be made, as it is in the best interest of the Children's safety, health and welfare. DHS witnesses testimony was credible.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding Child abuse and existence of aggravated circumstances. The court also finds that DHS need not make further reasonable efforts to reunify the Children with Mother. Accordingly, the order entered on March 17, 2015, should be affirmed.

By the court

Joseph Fernandes                    J.

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In Re: C.B.                  : CP-51-DP-0002176-2014

      K.B.                  : CP-51-DP-0002177-2014

APPEAL OF: A.M., Mother           : 1123 EDA 2015

**PROOF OF SERVICE**

~~I hereby certify that this court is serving, today Friday, July 10, 2015, the foregoing Opinion, by~~ regular mail, upon the following person(s):

Katherine Holland, Esquire
City of Philadelphia Law
Office of the City Solicitor
Department 1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102-1595
Attorney for D.H.S.

Collin Swim, Esquire
Defender Association of Philadelphia
Suite 300
Child advocacy Unit
1414 Samson Street 4th Floor
Philadelphia, PA 19102
Child Advocate

Marie Regine Charles-Asar, Esquire
100 South Broad Street, Suite 1518
Philadelphia, PA 19110
Attorney for Mother

BY THE COURT:

Honorable Joseph L. Fernandes