763 A.2d 873 (2000)
In the Matter of A.H., a Minor Adjudicated Dependent, Appellee.
Appeal of R.C.
In the Matter of A.L., a Minor Adjudicated Dependent, Appellee.
Appeal of R.C.
Superior Court of Pennsylvania.
Argued October 18, 2000.
Filed November 29, 2000.
*874 Kevin M. Burke, Erie, for appellant.
Joseph P. Burt, Asst. Public Defender, Erie, for A.H., appellee.
Michael R. Cauley, Erie, for Erie County Children and Youth Services, appellee.
Before CAVANAUGH, EAKIN and TAMILIA, JJ.
TAMILIA, J.:
¶ 1 Appellant/mother, R.C., appeals the Orders adjudicating her daughter, A.H., and son, A.L., dependent and issuing a finding of aggravated circumstances as to mother.
¶ 2 Mother's daughter, A.H., born March 6, 1999, suffered a subdural hematoma, ostensibly committed by mother's boyfriend, in June 1999. Six months later, while in mother's sole care, A.H. sustained severe injuries to such an extent that she was hospitalized with multiple bone fractures. Upon her discharge from the hospital, A.H. was placed in foster care. On December 14, 1999, the Erie County Office of Children and Youth (OCY) filed a petition for dependency. Following a hearing on January 18, 2000, the master recommended A.H. be adjudicated dependent and that aggravated circumstances be found to exist as to mother. On February 9, 2000, the court confirmed the findings of the master by adjudicating A.H. dependent and finding aggravated circumstances as to mother. The court denied mother's exceptions to the findings and on March 8, 2000, a disposition hearing was held, during which the court ordered A.H.'s continued placement in foster care. Mother filed a petition for rehearing and reconsideration, which was denied by the court, and, thereafter, filed a timely appeal.
¶ 3 OCY became involved with mother's son, A.L., after discovering mother was pregnant during the proceedings involving A.H. Thereafter, OCY was granted permission by the court to exercise custody of the child after his birth.[1] On February 14, 2000, A.L. was born and detained by OCY when mother declined to voluntarily place him. OCY filed a petition for dependency and on February 24th the master *875 recommended the child be adjudicated dependent and a finding of aggravated circumstances be made as to mother. Thereafter, the court implemented the master's recommendations. On March 22, 2000, a disposition hearing was held, during which the court ordered the continued placement of A.L. in foster care and a reunification plan to be pursued with his father, T.L. No services were to be provided to mother based on the court's finding of aggravated circumstances. This timely appeal followed.[2]
¶ 4 On appeal, mother presents the following questions for our review:
I. Was it error for the lower court to find that R.C. was the perpetrator of physical abuse when there was evidence that another person, T.L., had abused the child previously and was with the child when the abuse in question happened;
II. Was it error for the lower court to find that aggravate[d] circumstances existed as to R.C. when the evidence showed she was an abused person and that it was the person who abused her that also abused her child;
III. Was it an abuse of discretion for the Court to find that the Agency did not have to provide services to R.C. when the court was going to provide services to both the fathers, one of whom had been the subject of a report of abuse;
IV. Was it an abuse of discretion for the Court to deny R.C.'s Petition for rehearing and reconsideration when the evidence showed that the Agency withheld discoverable documents and when R.C. proffered testimony that would have changed the core finding of fact in the case; and
V. Is it unconstitutional to make a finding of aggravate[d] circumstances as to A.L. based on the actions of Mother related to her first child when a finding of aggravated circumstances creates a virtually irrefutable presumption that a child's and parent's fundamental constitutional right to be a family will be forfeited?
(Appellant's brief at 5.)
The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.
Appeal of L.S. & B.S., 745 A.2d 620, 622 (Pa.Super.1999) (citation omitted).
¶ 5 Mother claims she did not abuse A.H. and, thus, the court erred in removing A.H. from her custody and adjudicating the child dependent. Specifically, she argues her former boyfriend, T.L., was the perpetrator of the abuse and that she is a victim of abuse at his hands as well. OCY argues mother was the sole caretaker of A.H. at the time of the abuse and that her explanation of the child's injuries is incredible.
¶ 6 In this case, the medical evidence from the master's hearing established A.H. suffered a femur fracture, a buckle fracture of the tibia and a chip fracture of the fibula (N.T., 1/18/00, at 14). Mother claimed she was the sole caretaker of A.H. during the evening on which the child was injured (id. at 13). The treating physician testified a direct forceful blow, a fall and a twisting or shaking of the child caused the fractures (id. at 15-18). The fractures were inflicted within twelve to twenty-four hours prior to the time when the doctor *876 treated A.H. (id. at 19). The doctor found mother's explanation that A.H. had been caught in the crib frame inconsistent with the medical evaluation, which indicated the fractures were a result of abuse (id. at 20-21). In addition, the doctor found a healed fracture of the left radius, which was inflicted approximately one to two months prior to the examination, and a fracture of the upper humerus of the left arm, which was inflicted within the two to four week period prior to the exam (id. at 22-23). Following the examination, and in response to the doctor's inquiry, mother again asserted she was the sole caretaker of A.H. during the time in question (id. at 25).
¶ 7 In its Findings of Fact, the master indicated mother's explanation of the child's injuries was incredible and completely inconsistent with the nature of the child's injuries. The trial court accepted the master's findings and stated:
In the present case, there was prima facie evidence that mother was a perpetrator by her act or omission. The evidence of record shows that the fracture's to the child's femur and lower leg required a substantial amount of force and occurred within 12 to 24 hours of her admission to Children's Hospital. X-rays also revealed fractures to the child's left arm that were two to four weeks old. The mother admitted to being the child's sole caretaker and, as such, was responsible for the child's care at the time she was injured. Therefore, there was sufficient evidence to prove that she was a perpetrator of physical abuse by her intentional acts or by her omitting her duty to protect her child.
Trial Court Opinion, DiSantis, J., 5/3/00 at 4-5.
¶ 8 We conclude there is ample evidence in the record to support the court's findings. It is well settled:
[a] finding of abuse may support an adjudication of dependency. When the court's adjudication of dependency is premised upon physical abuse, its finding of abuse must be supported by clear and convincing evidence. However, its findings as to the identity of the abusers need only be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers (parents).
In re C.R.S., 696 A.2d 840, 843 (Pa.Super.1997) (internal quotations and citations omitted). Furthermore, "when determining whether a parent is providing a minor with proper care and control, we believe that the caretaker's acts and omissions should weigh equally." In the Interest of JOV, 454 Pa.Super. 630, 686 A.2d 421, 423 (1996). "The parental duty extends beyond mere restraint from actively abusing a child; rather, there exists a duty to protect the child from the harm that others may inflict." Id.
¶ 9 Although mother adamantly contends her former boyfriend, T.L., caused the injuries to A.H., there is no evidence in the record to support her claim. Mother bases her argument upon the fact T.L. was the alleged perpetrator of abuse upon A.H. in June 1999, when the child suffered a subdural hematoma. Even if we were to accept mother's contention, clear and convincing evidence was presented which demonstrated mother obviated her duty to protect A.H. from the abuse of others. By her own admission, however, mother was the sole caretaker of A.H. in December 1999 when the child suffered the severe fractures. Mother offered no testimony to refute this contention; however, she did offer an explanation for the child's injuries. Whether mother's account was consistent with the nature of A.H.'s injuries involved a credibility determination that will not be disturbed on appeal. Accordingly, there was sufficient evidence to find mother was the perpetrator of the abuse and to adjudicate A.H. dependent.
¶ 10 Mother also argues the trial court erred by finding aggravated circumstances *877 existed in this case. Specifically, she argues her failure to protect A.H. from the abuse inflicted by her former boyfriend does not constitute an omission which supports a finding of aggravated circumstances. Mother concedes, however, if this Court concludes there was sufficient evidence to support the court's finding that mother was the perpetrator of the physical abuse, then a finding of aggravated circumstances is proper. (Appellant's brief at 20 n. 7.)
¶ 11 In light of the foregoing discussion, we conclude the court's finding of aggravated circumstances was not an abuse of discretion. Pursuant to 42 Pa.C.S.A. § 6302, Definitions, "Aggravated circumstances", (2), aggravated circumstances exist when "[t]he child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent."[3] In this case, the testimony of A.H.'s treating physician made clear that mother's continued physical abuse of the child caused multiple fractures to her legs and arms. As a result, A.H. has developmental delays in physical functioning, which require weekly physical therapy sessions. We conclude, therefore, mother inflicted serious bodily injury upon A.H., thereby justifying the court's finding of aggravated circumstances.
¶ 12 Mother also argues the court abused its discretion by failing to order OCY to provide reunification services. She claims the evidence does not support the court's determination that she would not be a viable resource for A.H. in the future.
¶ 13 Under the Federal Adoption and Safe Families Act of 1997, P.L. 105-98, a state is eligible for federal matching funds if it has a plan for child welfare services. Section 671, State plan for foster care and adoption assistance, provides in relevant part:
(a) Requisite features of State plan. In order for a State to be eligible for payments under this part [42 U.S.C.S. § 670 et seq.], it shall have a plan approved by the Secretary which
(15) provides that
(A) in determining reasonable efforts to be made with respect to a child, as described in this paragraph, and in making such reasonable efforts, the child's health and safety shall be the paramount concern;
(B) except as provided in subparagraph (D), reasonable efforts shall be made to preserve and reunify families
(i) prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and
(ii) to make it possible for a child to safely return to the child's home;
(C) if continuation of reasonable efforts of the type described in subparagraph (B) is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child;
(D) reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that
(i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be *878 limited to abandonment, torture, chronic abuse, and sexual abuse);
42 U.S.C.A. § 671(a)(15)(A-D) (emphasis added). In interpreting the Adoption and Safe Families Act, this Court stated,
[t]he amendments make clear that the health and safety of the child supercede all other considerations. It also enumerates, without limiting, the types of parental behavior involving violence and homicide to family members that preclude the necessity to enter into a reasonable effort to maintain or restore the family relationship.
In the Interest of Lilley, 719 A.2d 327, 333 (Pa.Super.1998). The Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, complies with the Adoption and Safe Families Act and provides the court with discretion to "determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made" when the court finds aggravated circumstances exist. See 42 Pa.C.S.A. § 6341, Adjudication, (c.1), Aggravated circumstances; and § 6351, Disposition of dependent child, (e), Permanency hearings, (2), (f) Matters to be determined at permanency hearing,
At each hearing, the court shall:
(1) determine the continuing necessity for and appropriateness of the placement;
...
(9) if the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the home or to preserve and reunify the family need not be made or continue to be made, determine whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child ...[4]
¶ 14 In this case, the trial court's determination that reunification services as to mother were not appropriate is supported by sufficient evidence and, thus, we cannot conclude the court abused its discretion. When the court finds aggravated circumstances exist, it is well within its discretion to order the cessation of reunification services. It is clear mother's continued abuse of A.H. precluded the necessity of reasonable reunification efforts by OCY with her. As an alternative to termination, however, the court indicated a feasible placement goal for A.H. is reunification with her father, D.H., and, thus, provided him with a parenting education program and supervised visitation. Because the record supports the court's findings in this bifurcated approach, they will not be disturbed on appeal.
¶ 15 Although not specifically applicable in this case, we note that a trial court's finding of aggravated circumstances lends strong support for a change in a child's permanency goal to adoption. Pennsylvania's adoption and juvenile acts permit a court to consider certain aggravated circumstances which militate against returning the dependent child to his or her parent. Our legislation favors more expeditious adoptions; thus, when aggravated circumstances exist and the court determines reunification efforts need not be continued, OCY may proceed directly to change the child's permanency plan goal to adoption and terminate parental rights.
¶ 16 Mother also argues the court erred by denying her request for reconsideration and rehearing because OCY violated the discovery rules by failing to provide her with a psychological report prior to the *879 permanency hearing. In addition, she claims the court erred by declining to admit testimony that mother's prior boyfriend, T.L., was present during the time in which A.H. suffered multiple fractures.
¶ 17 "The Juvenile Act provides liberal access to court records and provides the opportunity for liberal discovery in a dependency or delinquency action." In re J.C., 412 Pa.Super. 369, 603 A.2d 627, 630 (1992). Section 6307, Inspection of court files and records, provides in relevant part:
All files and records of the court in a proceeding under this chapter are open to inspection by:
* * *
(2) The parties to the proceeding and their counsel and representatives, but the persons in this category shall not be permitted to see reports revealing the names of confidential sources of information contained in social reports, except at the discretion of the court.
42 Pa.C.S.A. § 6307(2). Section 6333, Subpoena, authorizes the court to issue a subpoena requiring the production of documents by the local Children and Youth Services upon the request of a party.
¶ 18 Mother cites In re J.C., supra, to support her contention that section 6333 is not discretionary and, thus, this Court must remand the matter when a party is not provided with all discoverable materials. In re J.C., however, significantly differs from the case at hand. Prior to the dependency hearing in In re J.C., the mother filed a motion with the court to view all of the documents of the Susquehanna County Children and Youth Services which formed the basis of their argument that her children were dependent. The court refused to allow the mother access to the file and refused to issue a subpoena for the file at the request of the mother. Following the dependency hearing, the court adjudicated the mother's children dependent. On appeal, this Court found the trial court violated section 6333 of the Juvenile Act and that as a result, the mother was denied her right to effectively defend against the allegations of abuse.
¶ 19 In this case, it is clear mother's argument is not supported by the rationale of In re J.C. or by either of the cited provisions of the Juvenile Act. The record indicates mother's counsel claims to have sent requests to OCY regarding discoverable materials (N.T., 3/8/00, at 12-13; Petition for Rehearing and Reconsideration, 3/24/00, n. 1). While OCY may have failed to respond to the letters sent by mother's counsel, the trial court did not err because mother did not petition the court for relief. The court discovered mother did not have access to the psychological report at the dependency hearing. At that point, mother could not claim the trial court failed to follow the statutory protections to ensure that she effectively could defend against the allegations of abuse. The rules do not allow a party, who fails to petition the court for the production of documents, to later claim the court denied the party the right to a fair hearing because certain documents were not inspected. Because mother failed to petition the court for a subpoena requiring the production of any documents from OCY, section 6333 provides no protection. In addition, section 6307 only gives access to reports and files in the court's possession and because it does not appear as though the court had in its possession the psychological report, mother is entitled to no relief under this section.
¶ 20 Mother's contention the trial court erred by declining to admit testimony that mother's prior boyfriend, T.L., was present during the time in which A.H. suffered her injuries also is without merit. In mother's Petition for Reconsideration and Rehearing, she contends a witness, Annette Lewis, would testify mother's prior boyfriend was in A.H.'s room when the child suffered her injuries.
*880 ¶ 21 The Juvenile Act permits broad discretion in the admission of evidence in dependency proceedings. Section 6341(d), Evidence on issue of disposition, allows the admission of "all evidence helpful in determining the questions presented," including oral and written reports, during a disposition review hearing. Upon an adjudication of dependency, section 6341(e), Continued hearings, permits the trial court to continue to conduct hearings and receive evidence bearing on the disposition of the child's need for supervision. "It is well settled that questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of that discretion exists." In re M.K., 431 Pa.Super. 198, 636 A.2d 198, 203 (1994).
¶ 22 It is clear the court did not abuse its discretion by denying mother's request for reconsideration or rehearing based upon the alleged testimony of Annette Lewis. The offer of proof as to what Lewis would testify does not exonerate mother or establish T.L. was the perpetrator of the abuse on A.H. Even if Lewis testified T.L. was in the room at the time A.H. sustained her injuries, and implied he was the perpetrator, the adjudication of dependency was proper. See In the Interest of JOV, supra, 686 A.2d at 423. Accordingly, the trial court did not err in failing to admit the testimony of Annette Lewis.
¶ 23 Finally, mother contends the trial court erred in finding aggravated circumstances exist in the case of her son, A.L., based upon the adjudication and findings with regard to her daughter, A.H. Specifically, mother claims the trial court established an irrefutable presumption that a finding of aggravated circumstances as to one child justifies a finding of dependency as to any future child, which denies her constitutional right to be a family with her children. In her reply brief on appeal to this Court, however, mother concedes she failed to raise the constitutionality of the aggravated circumstances provision of the Juvenile Act in the lower court and, thus, the claim is waived. (Appellant's reply brief at 4.)[5]
¶ 24 Pursuant to Pa.R.A.P. 521, Notice to Attorney General of Challenge to Constitutionality of Statute, when a party challenges the constitutionality of a statute, he or she must notify the State Attorney General Office. "Failure to do so [] results in waiver of the claim." In the Interest of J.Y., 754 A.2d 5, 11 (Pa.Super.2000). Accordingly, mother waived the issue of the constitutionality of the aggravated circumstances provision of the Juvenile Act due to her failure to notify the Pennsylvania Attorney General.
¶ 25 Furthermore, even if mother did not waive this claim, her contention that the aggravated circumstances provision is unconstitutional is without merit. Mother argues "this Court should interpret the statute to preclude a finding that a woman who failed to protect their [sic] children from abusive men are subject to a finding of aggravated circumstances." (Mother's reply brief at 6.) Mother fails to recognize, however, the court found she was the perpetrator of the physical abuse of A.H. Although it is well settled "a child should not be found dependent merely because a sibling is dependent", In the Interest of J.M., 438 Pa.Super. 409, 652 A.2d 877, 881 (1995) (citations omitted), all parties in this case stipulated to the dependency of mother's son, A.L. (N.T., 2/24/00, at 5). The court did not rely on an irrefutable *881 presumption that the finding of aggravated circumstances in A.H.'s case justified an adjudication of dependency in A.L.'s case. Accordingly, mother's constitutional challenge to the Juvenile Act must fail.
¶ 26 In light of the foregoing discussion, the court did not abuse its discretion by adjudicating A.H. and A.L. dependent and finding aggravated circumstances exist as to mother, thereby eliminating the provision of OCY services to her.
¶ 27 Orders affirmed.
NOTES
[1] In In re DeSavage, 241 Pa.Super. 174, 360 A.2d 237, 242 (1976), remanded on other grounds, the court held that the court may find deprivation on the basis of prognostic evidence. The court need not experiment with the status of the child when the consequences, if unsuccessful, could be seriously detrimental or even fatal.
[2] The appeals were consolidated for purposes of our review by the July 12, 2000 Order of this Court.
[3] Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 42 Pa.C.S.A. § 6302, Definitions, "Serious bodily injury".
[4] Pursuant to the Federal Adoption and Safe Families Act of 1997, new figures released by the Department of Health and Human Services show that 46,000 foster care children were legally adopted in 1999, a 28% increase from the previous year. The Crisis in Foster Care, Time Magazine, Nov. 13, 2000, 82.
[5] To the extent OCY claims mother waived this issue for her failure to include it in the concise statement of matters complained of on appeal, we note the trial court's Order directing her to file the statement was filed pursuant to mother's appeal from the adjudication of A.H. Mother was not directed to file a statement in the appeal of the dependency adjudication of her son, A.L., and, thus, we do not conclude mother waived this issue pursuant to Pa.R.A.P. 1925, Opinion in Support of Order, (b), Direction to File Statement of Matters Complained of.