J-S29032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: L.S., A MINOR  :  IN THE SUPERIOR COURT OF
     :        PENNSYLVANIA
     :
APPEAL OF: E.M.T., MOTHER    :
     :
     :
     :
     :
     :
     :  No. 434 WDA 2022

Appeal from the Order Entered March 25, 2022
In the Court of Common Pleas of Erie County Domestic Relations at
No(s):  CP-25-DP-0000069-2022

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:      **FILED:  November 14, 2022**

E.M.T. ("Mother") appeals from the order adjudicating her minor child,
L.S. ("Child") dependent, finding that aggravated circumstances existed
against Mother, finding no reasonable efforts towards reunification necessary,
and establishing adoption as the placement goal for Child.  March 25, 2022
Order of Adjudication and Disposition ("3/25/22 Order").  By the 3/25/22
Order, the trial court further found that aggravating circumstances also
existed against G.T.S., Child's father ("Father").[1]  We affirm.

The trial court set forth the factual and procedural history of this matter
in its 1925(a) opinion issued on May 19, 2022 ("TCO"):

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father has also appealed the 3/25/22 Order.  The trial court addressed both
Mother's and Father's appeals in its 1925(a) opinion.

On March 6, 2022, the [Erie County Office of Children & Youth ("OCY")] received a General Protective Services Referral ("GPS") after [Child]'s twin sister, A.S., was found unresponsive in her pack 'n play. A.S. was transported to the hospital, where she was pronounced dead on arrival. [Mother and Father] reported to the Erie Police Department ("EPD") that A.S. was fed around 9:00 a.m. and then put down for a nap around 10:30 a.m. in the pack 'n play on a boppy pillow.[2] When Appellants went to check on A.S., she was face down on the side of the boppy pillow, unresponsive, at which time they reported they called 911. It was determined that A.S. died due to suffocation.

On March 7, 2022, [OCY] went to [Mother and Father's residence] to follow up on the GPS referral and observed Child lying in the pack 'n play sleeping on a boppy pillow. Through a follow-up investigation, [OCY] learned that Mother had been instructed repeatedly through Project First Step, Nurse-Family Partnership, and [OCY] about safe sleeping techniques and not using the boppy pillow without supervision.

TCO at 2 (citations to record omitted). An Emergency Protective Order for Child was obtained on March 9, 2022. The order was issued based upon an application that set forth OCY's concerns that Child was not safe in the care of her parents due to the parents' continued use of the boppy pillow even after the death of A.S. on the previous day, together with Mother's history of failure to meet the needs of her other children,[3] her mental health history, and her

---

[2] A "boppy pillow" is a feeding and infant support pillow introduced by the Boppy Company and designed for support during "supervised awake time." *See* www.boppy.com/pages/safe-product-use (last visited on November 2, 2022).

[3] Mother's parental rights were involuntarily terminated as to K.B.T. on July 16, 2018, pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b). Her parental rights were involuntarily terminated as to B.K.T., Jr., on October

limited intellectual abilities. On March 14, 2022, OCY filed a petition for dependency, seeking a finding of aggravated circumstances against both Mother and Father.[4] In addition to Mother's continued disregard of the safe sleeping techniques on which she had been repeatedly instructed, the dependency petition cites Mother's significant history with OCY dating back to 2017, the involuntary termination of her parental rights as to two of her other children and her untreated mental health diagnoses, which include schizophrenia, bipolar disorder, depression and anxiety. Petition for Dependency at 4.

An adjudication and disposition hearing was held on March 21, 2022. Following the hearing, the trial court found that OCY had established, by clear and convincing evidence, that Child was without proper parental control, and adjudicated Child dependent pursuant to 42 Pa.C.S. § 6302(1)(A). A disposition hearing was held immediately following the adjudication, and there, the trial court found OCY had established by clear and convincing

---

18, 2018, pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5) and (b). **See** OCY Exhibits 1 and 2.

[4] OCY sought aggravated circumstances against Father based upon his conviction of an equivalent crime in another jurisdiction. **See** 42 Pa.C.S. § 6302(3)(iv). The dependency petition alleges that, in addition to Father's continued disregard for safe sleeping techniques despite repeated warnings, he has a significant criminal history in the state of Illinois and the Commonwealth of Pennsylvania, including sexual offenses with a minor child victim under the age of 9 in Illinois, and two prior convictions for simple assault and criminal conspiracy-robbery in Pennsylvania. Dependency Petition at 4.

evidence that aggravated circumstances existed with regard to both Mother and Father pursuant to 42 Pa.C.S. § 6341(c.1).[5]

Mother does not appeal from the adjudication of dependency or the trial court's determination that aggravating circumstances existed; instead, Mother only challenges the establishment of the placement goal of adoption for Child, presenting the following claims for our review:

> 1.    Whether the Trial Court committed an error of law by allowing the irrelevant, unconstitutional five-year-old testimony of Dr. Peter v[o]n Korff?
>
> 2.    Whether the Trial Court committed an error of law by changing the goal from reunification to adoption without providing [] Mother the ability [to] correct any issues since substantial changes have occurred since the 2018 adoption cases.

_____

[5] Section 6341(c) states that "[i]f the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing…to make a proper disposition of the case.  42 Pa.C.S. § 6341(c).  Section (c.1) states:

> Aggravated circumstances.—If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist.  If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3)(relating to disposition of dependent child).

42 Pa.C.S. § 6341(c.1).  "Aggravated circumstances" include those in which "[t]he parental rights of the parent have been involuntarily terminated with respect to a child of the parent."  42 Pa.C.S. § 6302(5).

Mother's Brief at 2.

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the finding of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). *See also In re M.S.*, 980 A.2d 612, 614 (Pa. Super. 2009). Under this standard, we must determine whether the judgment of the trial court was manifestly unreasonable, whether it disregarded or misapplied the law, or whether its action was the result of partiality, bias or ill will. *In the Matter of S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008), *appeal denied*, 959 A.2d 320 (Pa. 2008).

At the hearing, OCY presented, without objection, seventeen exhibits, as well as the testimony of four witnesses, including that of OCY supervisor Rhiannon Bernadini, licensed psychologist Dr. Peter Von Korff, Lisa Kobusinski, senior family specialist through Project First Step; and Tiffany Thomas, nurse home visitor. In its opinion, the trial court provided extensive analysis of each of those witness's testimony, with citations to the record. *See* TCO at 3-10. We adopt the trial court's recitation of their testimony for the purpose of this appeal. *See id*. Exhibits 1 through 8 included historical orphans' court dependency court documentation as it pertained to Mother's other two children.

Before this Court, Mother claims, first, that the trial court erred in allowing the testimony of Dr. von Korff, who performed a psychological evaluation of Mother at a prior dependency docket regarding the minor child, K.B.T., in 2017. She avers that his testimony is irrelevant because the evaluation occurred five years ago, and he did not perform a new evaluation of Mother in this case.[6]  Mother's Brief at 6.

"The decision of whether to admit or exclude evidence is within the sound discretion of the [trial] court.  A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the

_____

[6] In her brief, Mother also asserts that Dr. von Korff's testimony should be barred because it was unconstitutionally ordered.  Mother's Brief at 7-8.  This argument is raised for the first time before this Court, and is therefore waived. See Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.2d 260, 269 (Pa. 2020) ("[I]t is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal."); ***Commonwealth v. Cline***, 177 A.3d 922, 927 (Pa. Super. 2017) ("[I]ssues, even those of constitutional dimension, are waived if not raised in the trial court.") (citation omitted).

Even if this issue were not waived, we would still find it lacking in merit. Mother offers no elaboration with regard to the so-called unconstitutionally-ordered 2017 evaluation, and there is nothing in the record to support the notion that Mother objected to the evaluation at the time it was performed or at any time thereafter.  Dr. von Korff testified that he interviewed Mother on three different occasions prior to submitting his November 6, 2017 written report, and that she was an accommodating subject and was receptive to the evaluation.  N.T. at 43.  ***Compare In re T.R.***, 731 A.2d 1276 (Pa. 1999), wherein the Pennsylvania Supreme Court determined that a mother's state constitutional right to privacy precluded the trial court from compelling her to participate in a psychological evaluation, the results of which would be disclosed to the interested parties.

[trial] court overrides or misapplies the law." ***In re A.J.R.-H.***, 188 A.3d 1157, 1166-67 (Pa. 2018) (citations omitted). "The well-settled test for relevancy states that evidence is relevant if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" ***Interest of S.K.L.R.***, 256 A.3d 1108 (Pa. 2021) (quoting Pa.R.E. 401).

The trial court addressed the admission of Dr. von Korff's testimony in its opinion:

> In a dependency proceeding, the Court must consider all relevant evidence in determining whether the child is without proper parental care. Here, [OCY] offered the testimony of Dr. von Korff's 2017 psychological assessment, evaluation, and recommendations pertaining to Mother's ability to properly parent her other children. Specially, Dr. von Korff testified that Mother reported to him that her first psychiatric hospitalization was at the age of seven (7), followed by several psychiatric hospitalizations as a teenager.
>
> According to Dr. von Korff, Mother had been in and out of psychiatric facilities throughout the entirety of her life. He testified to a reasonable degree of medical certainty that the testing and the interview work confirmed that "[s]he is a chronically mentally ill individual in need of constant psychiatric oversight." Dr. Von Korff concluded that Mother's psychological issues would require ongoing psychiatric care with appropriate medication.
>
> - - -
>
> [Dr. von Korff] ultimately concluded that Mother's psychological issues will persist throughout her life. Thus, Dr. von Korff's findings were not limited to her ability to parent in 2017 safely. Rather, it addressed her ability to parent at that time and her ongoing psychological needs that would continue to persist throughout her life and would require appropriate psychological care and medications. Indeed, this testimony is relevant to Mother's ability to parent L.S., as there is no evidence offered that

> Mother has received the continued and intensive treatment Dr. von Korff deemed necessary.
>
> Additionally, Dr. von Korff testified that Mother's history of disregard for [OCY]'s safety concerns throughout her 2017 dependency demonstrated "a kind of false belief in her own capacity to manage things," which caused concerns for her ability to safely parent the child. This testimony was consistent with the prevalent theme regarding Mother throughout the adjudication proceeding, i.e., her disregard for safety concerns regarding parenting and her belief that she did not have to follow the advice of the service providers.

TCO at 12-13 (transcript citations omitted). We agree with the analysis of the trial court. Dr. von Korff's testimony regarding Mother's mental health issues directly relate to allegations presented in the dependency petition.[7] His testimony therefore had a tendency to make those factual allegations more or less probable than they would be without the evidence. Moreover, Dr. Korff's testimony was a fact of consequence in determining the action. The trial court committed no error of law in permitting the expert testimony into evidence.

_____

[7] The dependency petition states:

> [Mother] has a significant history with [OCY], dating back to 2017, due to concerns about her ability to safely care for and meet the basic needs of her children. Additional concerns regarded her untreated mental health diagnoses, which included Schizophrenia, Bipolar, Depression, and Anxiety. [Mother] has two previous children removed from her care on March 24, 2017, and January 22, 2018. Despite working with service providers to resolve the issues related to unfit parenting and unstable mental health, [Mother]'s rights were involuntarily terminated to these two children on July 16, 2018, and October 18, 2018, respectively.

Dependency Petition at IA.(c).

In her second issue, Mother argues that the trial court erred in its determination that reasonable efforts did not need to be made by OCY to reunify Child with her parents and in establishing adoption as the placement goal. Mother's Brief at 8-10. She refers to the testimony of the specialist from Project First Step, Ms. Kobusinski, who had worked with Mother in the prior dependency cases as well as at present, and that of the nurse home visitor, to buttress her contention that she has made substantial growth in her ability to care for Child. *Id*. Mother asserts that she had been abiding by, and benefitting from, the instructions and services that were being provided by OCY since she became pregnant with A.S. and Child, and that even Dr. von Korff attested to the fact that her mental health could improve if she continued to work with her providers. *Id*. at 9.

When proceeding to a disposition of a dependent child under 42 Pa.C.S. § 6351, the court may make any of the enumerated orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child, including transferring temporary legal custody to a public agency authorized by law to receive and provide care for the child. *See* 42 Pa.C.S. § 6351(a)(2)(iii). Under subsection (b), the court is not permitted to enter the required findings under subsections (b)(1), (b)(2), or (b)(4) if the court previously determined that "aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required." 42 Pa.C.S. § 6351(b). Where the court has found, as here, that aggravated

circumstances exist, it must then determine whether reasonable efforts to prevent the need from removing the child from the home shall be made, and it "may end reasonable efforts at its discretion." See *In re L.V.*, 127 A.3d 831, 839 (Pa. Super. 2015); *In re A.H.*, 763 A.2d 873, 878 (Pa. Super. 2000).

Instantly, the trial court explained that:

Based on Mother's history with [OCY] regarding the safety of the children in in care, as set forth in the Emergency Protective Orders for [B.K.T. and K.B.T] which ultimately led to the termination of her parental rights to those children; the preventable death of A.S. and Mother[`]s repeated demonstration that, despite services both in 2017-2018 and 2022, she is still unable to safely parent, the [trial] [c]ourt concluded that [OCY] did not have to make reasonable efforts for reunification.

TCO at 14.

The trial court noted the testimony of the OCY supervisor, Ms. Bernardini, who performed the GPS investigation and spoke to the service providers who had been assisting Mother with parenting. Ms. Bernardini confirmed that Mother allowed the two babies to sleep together on their sides with boppy pillows and blankets, notwithstanding the instructions she had been repeatedly given not to do so. TCO at 4; N.T. at 13, 17-18. The trial court summarized the testimony of the Project First Step senior family specialist, Ms. Kobusinski, who began working with Mother in 2017 when she was pregnant with K.B.T., on housing, parenting, childbirth education, and connecting with mental health services. Ms. Kobusinski had reported in 2017 that Mother was exceptionally challenging to work with, missed visits, and became easily agitated when Project First Step or OCY staff attempted to

educate her or redirect her when she struggled with caring for her baby. TCO at 7; N.T. at 69-70. The trial court noted the family specialist's acknowledgement, on cross-examination, that Mother was in a better state of mind in 2022 than she had been in 2017-18, and appeared to being doing "okay" with the children; nevertheless, the court emphasized Ms. Kobusinski's testimony that providers continued to work with Mother on feeding issues due to doctors' concerns that the children were being overfed and on each of seven visits to the home in the weeks prior to A.S.'s death, she attempted to educate her on safe sleeping procedures. TCO at 8; N.T. at 76, 82.

The testimony of Ms. Thomas, the nurse home visitor was also summarized in the trial court's opinion; the trial court noted her statements that toward the end of January, 2022, Mother was putting the babies in bed with the boppy pillows despite her numerous attempts to advise and educate her as to the dangers of utilizing incorrect sleeping techniques, including suffocation and/or sudden infant death syndrome. TCO at 9; N.T. at 94, 96. Finally, the trial court cited, but did not give great weight to Dr. von Korff's acknowledgement, on cross-examination, that Mother could have fared better in a present day evaluation, assuming she had received all of the prescribed treatment she needed in the years since 2017; the trial court cited Dr. von Korff's testimony that he did not consider appointments with a blended case manager and mental health treatment delivered by eleven different therapists over the past five years as a fulfillment of the recommendations he made in 2017 for Mother's care. TCO at 6-7; N.T. at 56-57.

After a careful review of the record, we can find no support for Mother's assertion that she has grown substantially in her ability to care for Child. We find no abuse of discretion in the trial court's determination that reasonable efforts towards reunification were no longer necessary, and in establishing the placement goal of adoption. We therefore affirm the March 25, 2022 Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2022