J-A24011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.P.-I., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.P., MOTHER | : : : : : : : | |
| | : | No. 1630 EDA 2022 |

Appeal from the Order Entered June 14, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001196-2021

BEFORE: PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 9, 2022**

K.P. (Mother) appeals from the order, entered on June 14, 2022, determining that aggravated circumstances exist as to Mother, and that K.P.-I. (Child), born in November of 2021, or another of Mother's children had been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated neglect by Mother. The order further directed that no efforts were to be made to preserve the family and reunify Child with Mother. Following our review, we affirm.

In a memorandum decision issued by this Court in response to a prior appeal filed by Mother from the order adjudicating Child dependent, we provided a partial factual summary of events, stating:

> On December 14, 2021, the trial court held an adjudicatory hearing for Child. Mother was present at this hearing. The trial court heard testimony from the [Philadelphia Department of Human Services ("DHS")] Investigator, the [Community Umbrella

Agency ("CUA")] Supervisor, and Mother. Child was adjudicated dependent[,] and she was fully committed to DHS. At this time, Mother's visits were suspended due to a finding of grave threat.[1]

> [1] The trial court's determination that Mother was a grave threat to Child was based on the evidence presented at the dependency hearing. The court noted that Mother's involvement with DHS began in 2012, which resulted in the involuntary termination of Mother's rights to three children. Additionally, another of Child's siblings and Mother tested positive for PCP at the time of that sibling's birth. That sibling died when in Mother's care. These occurrences were only some of Mother's actions that contributed to the court's determination that Mother presented a grave threat to Child. Some other actions by Mother were her combativeness and aggressiveness.

Mother's visits could resume once she showed consistency in her mental health treatment for at least ninety-days, at which time they could be modified to bi-weekly one-hour visits, line of sight/line of hearing supervised at the agency. Mother was also to provide an updated treatment plan and progress report prior to visits being re-implemented. Mother was also referred to the Clinical Evaluation Unit ("CEU") for a forthwith full drug and alcohol screen, dual diagnosis assessment, monitoring, and five random screens prior to the next court date. Mother was ordered to enroll in a dual diagnosis program, consistently attend such program, and provide updated treatment plans and progress reports. Mother was also referred to Behavioral Health Services ("BHS") for evaluation and recommendations. Mother was ordered to verify employment and provide proof of income to … [CUA] monthly, comply with CUA, remain in contact with CUA, and comply with a home assessment CUA was ordered to complete. Mother's referral to family school was also suspended until she showed consistency in her mental health program. Mother was also ordered to sign all necessary releases and consents. On December 27, 2021, Mother's [c]ounsel filed this appeal on behalf of Mother.

***In the Interest of K.P.-I.***, 50 EDA 2022, unpublished memorandum at 1-2 (Pa. Super. filed August 19, 2022) (quoting Trial Court Opinion, 2/2/22, at 3-4).

On March 30, 2022, a permanency review hearing was held at which DHS requested that the trial court find that aggravated circumstances under 42 Pa.C.S. § 6302(2) and (5) be found as to Mother.[1]  After finding that aggravated circumstances existed under section 6302(5), the court ordered briefs to be filed within thirty days relating to section 6302(2).  A permanency review hearing followed on June 14, 2022.  The court determined that aggravated circumstances existed under section 6302(2) and that no efforts were to be made to preserve the family and unify Child with Mother.

Mother filed the instant appeal, raising the following issue for our review:

> Did the lower court err by making a finding of aggravating circumstances as to Mother where "clear and convincing evidence" was not provided, that warranted a finding of aggravated

---

[1] Section 6302(2) and (5) of the Juvenile Act describe two of the circumstances that identify "aggravated circumstances" as follows:

> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.
>
> …
>
> (5) The parental rights of the parent have been involuntarily terminated with respect to a child of the parent.

42 Pa.C.S. § 6302(2), (5).

circumstances as to Mother, as required by 42 Pa.C.S.[] § 6302(2)?

Mother's brief at 6.

In response to Mother's appeal, the trial court directed this Court to the notes of testimony provided at the beginning of the hearing held on June 14, 2022, wherein it explained the basis for its decision. That statement by the trial court provides the following:

> We're here in the matter involving [K.P.-I.]. This child is four months old. This is listed as a permanency review.
>
> At the last hearing[,] I allowed counsel an opportunity to brief the issue as to whether the circumstances surrounding the death of [M.S.[2]] met the definition of aggravated circumstances. All counsel presented argument in that regard and were permitted to provide further argument [i]n the briefs with regard to that issue.
>
> The [c]ourt has decided that issue and does find that it does meet[] the definition of aggravated circumstances.
>
> 42 P[a.C.S.], Section 6302. Subsection 2 states[:] The child or another child of the parent who's been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.
>
> 23 P[a.C.S., Section 6303 (b.1)] of the Child Protective Services Law states[:] The term child abuse shall mean intentionally, knowingly or recklessly -- under Subsection 9 -- causing the death of a child through any act or failure to act.
>
> Th[ese are] the applicable sections of the law that apply to this case.
>
> With regard to the definition of reckless, under 18 P[a.C.S.], Section 302, Subsection B, Subsection 3[,] it indicates: A person acts recklessly with regard – I'm sorry -- a person acts recklessly

_____

[2] M.S. was another of Mother's children.

- 4 -

with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material elements exist or will result from its conduct. The risk must be of such a nature and degree that considering the nature and the intent of the actor's conduct and the circumstances known to him, [its] disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

Despite the suggestions and arguments by [M]other's counsel, the law does not require a criminal [c]ourt to determine whether the conduct is reckless in order for this [c]ourt to find that [Mother's] conduct was reckless. There is no requirement for [Mother] to be criminally charged in order for this [c]ourt to find recklessness.

It is undisputed that on May 18, 2019, [M.S.], a newborn, died as a result of [Mother] co-sleeping with the infant. Two months prior … when [M.S.] was born, he and [Mother] both tested positive for PCP. Mom was alleged to have been under the influence when she elected to place the two-month-[old] in her bed and then get in her bed and go to sleep. There was a Pack 'n Play in the room, but [Mother] elected to get into bed with the infant.

The relevant testimony in this case from a March 30, 2022 hearing on pages 15 to 16, there was a question and answer between Mr. Server [Mother's counsel] and Ms. Johnson-Trott [the DHS Investigator].

Mr. Server asked, Okay. And how did you determine it was reckless as opposed to negligent?

ANSWER: From having a conversation with mom.

QUESTION: Okay. And so, it was your impression -- your conclusions based upon your own experience that this was reckless as opposed to negligent?

ANSWER: It was reckless due to the fact that [Mother] was co-sleeping, which was discussed with her on several different occasions, not … just by myself.

QUESTION: Right.

ANSWER: By the hospital as well as the CUA worker.

The [c]ourt -- this [c]ourt found the testimony of Ms. Johnson-Trott to be credible and her to be a reliable witness.

There was clear and convincing evidence that co-sleeping was discussed with [Mother] on several occasions. [Mother] nonetheless, while under the influence, chose to co-sleep with the infant, which resulted in the infant[']s death.

Under the circumstances, the [c]ourt finds [Mother] recklessly caused the death of her child under 22 P[a.C.S.] Section 6303 and Subsection B. 1. Subsection 9.

Considering that co-sleeping was addressed with [Mother] on multiple occasions by CUA and the hospital[,] her actions and being under the influence and co-sleeping with a newborn child demonstrates a gross deviation from the standard of conduct.

On March 30, 2022, this [c]ourt found aggravated circumstances based on involuntary terminations of [Mother's] parental rights of two children. At that time, the [c]ourt found reasonable efforts should nonetheless continue.

At this time, given the totality of the circumstances and the additional finding of aggravated circumstances based on child abuse, the [c]ourt finds no reasonable efforts are required.

N.T., 6/14/2022, at 5-8.

The main thrust of Mother's argument centers on her allegation that M.S.'s death was caused by negligence and not recklessness. She also asserts that she was not charged in conjunction with M.S.'s death and that no law was violated by her bringing M.S. into her bed or by consuming alcohol. Essentially, Mother is requesting that this Court reweigh the evidence and find that her actions did not meet the recklessness standard.

Although the Child Protective Services Law does not define recklessness, that term is defined in the Crimes Code, 18 Pa.C.S. § 302(b)(3), which states that:

> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

Moreover, in **In re R.P.**, 957 A.2d 1205 (Pa. Super. 2008), the trial court there found the existence of aggravated circumstances under 42 Pa.C.S. § 6302(2), which allowed it to suspend efforts at reunification. The **R.P.** decision further explains that:

> "Because the trial judge is in the best position to observe the witnesses and evaluate their credibility, we accord great weight to his credibility determinations." **In re G.P.-R.,** 851 A.2d 967, 974 (Pa. Super. 2004) (quoting **In re R.T.**, 778 A.2d 670, 677 (Pa. Super. 2001)). As we stated in **In re C.B**., [861 A.2d 287, 298 (Pa. Super. 2004)]:
>
>> … [The purpose of The Adoption and Safe Families Act, 42 U.S.C. § 671 *et seq*.] is to eliminate the need for family reunification efforts when it is established that children were exposed to sexual or physical abuse. These parents have exhibited no responsibilities attendant with parenting but have been abusive and grossly neglectful; thus, we direct our focus away from any parental "rights" and toward the protection of these innocent, scarred children, who have been subjected to egregious horrors that shake the very foundations of the precious family institution.

*Id.* at 1219. Furthermore, "the focus is not on the rights of the [p]arents; instead, the children's safety, permanence, and well-being take precedence." *Id.*

Under the circumstances here, we do not hesitate to affirm the trial court's finding of aggravated circumstances, based on its determination that Mother's actions were reckless. She had been advised by numerous entities not to co-sleep with an infant and also admitted that she was under the influence at the time. Moreover, the trial court's decision that reunification services were not appropriate is supported by the evidence and, therefore, the court did not abuse its discretion. "When the court finds aggravated circumstances exist, it is well within its discretion to order the cessation of reunification services." *In re A.H.*, 763 A.2d 873, 878 (Pa. Super. 2000). The evidence of record supports the court's findings. We, therefore, affirm the order from which Mother appealed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2022

- 8 -