J-S29031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: G.T.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 433 WDA 2022 |

Appeal from the Order Entered March 25, 2022
In the Court of Common Pleas of Erie County Domestic Relations at
No(s): CP-25-DP-0000069-2022

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: JANUARY 10, 2023**

G.T.S. ("Father") appeals from the order that adjudicated his minor child, L.S. ("Child"), dependent, found aggravating circumstances against Father, found that no reasonable efforts towards reunification were necessary, and established adoption as the placement goal for Child.  March 25, 2022 Order of Adjudication and Disposition ("3/25/22 Order").  In the 3/25/22 Order, the trial court further found that aggravating circumstances also existed against E.M.T., Child's mother ("Mother").[1]  Additionally, Father's counsel has filed a petition for leave to withdraw and accompanying brief

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother also appealed the 3/25/22 Order.  This Court affirmed the 3/25/22 Order as to Mother on November 4, 2022.  ***In Interest of L.S.***, No. 434 WDA 2022 (Pa. Super. filed November 14, 2022), unpublished memorandum, 2022 WL 16911854.

pursuant to **Anders v. California**, 386 U.S. 738 (1967).  We affirm and grant the petition to withdraw.

The trial court set forth the factual and procedural history of this matter in its Pa.R.A.P. 1925(a) opinion, issued on May 19, 2022 ("TCO"):

On March 6, 2022, the [Erie County Office of Children & Youth ("OCY")] received a General Protective Services Referral ("GPS") after [Child]'s twin sister, A.S., was found unresponsive in her pack 'n play.  A.S. was transported to the hospital, where she was pronounced dead on arrival.  [Mother and Father] reported to the Erie Police Department ("EPD") that A.S. was fed around 9:00 a.m. and then put down for a nap around 10:30 a.m. in the pack 'n play on a boppy pillow.[2]  When [Mother and Father] ;went to check on A.S., she was face down on the side of the boppy pillow, unresponsive, at which time they reported they called 911.  It was determined that A.S. died due to suffocation.

On March 7, 2022, [OCY] went to [Mother and Father's residence] to follow up on the GPS referral and observed Child lying in the pack 'n play sleeping on a boppy pillow.  Through a follow-up investigation, [OCY] learned that Mother had been instructed repeatedly through Project First Step, Nurse-Family Partnership, and [OCY] about safe sleeping techniques and not using the boppy pillow without supervision.

TCO at 2 (citations to record omitted).  An application for an emergency protective order was filed setting forth OCY's concerns that Child was not safe in the care of her parents due to: (i) the continued use of the boppy pillow even after the death of A.S. on the previous day and despite attempts by

---

[2] A "boppy pillow" is a feeding and infant support pillow introduced by the Boppy Company and designed for support during "supervised awake time." **See** www.boppy.com/pages/safe-product-use (last visited on December 30, 2022).

numerous health providers to instruct them on its danger; (ii) Mother's history of failure to meet the needs of her other children;[3] (iii) Mother's mental health history; and (iv) Mother's limited intellectual abilities. An Emergency Protective Order for Child was issued on March 9, 2022. On March 14, 2022, OCY filed a petition for dependency, seeking a finding of aggravated circumstances against both Mother and Father.[4]

An adjudication and disposition hearing was held on March 21, 2022. Following the hearing, the trial court found that OCY had established, by clear and convincing evidence, that Child was without proper parental control, and adjudicated Child dependent pursuant to 42 Pa.C.S. § 6302(1)(A). A disposition hearing was held immediately following the adjudication, and there, the trial court found OCY had established by clear and convincing evidence that aggravated circumstances existed with regard to both Mother and Father pursuant to 42 Pa.C.S. § 6341(c.1). By its March 25, 2022 order, adoption was established as the placement goal for child and OCY was directed

---

[3] Mother's parental rights were terminated as to her two other children on October 18, 2018 and July 16, 2019, respectively. **See** Order of Adjudication and Disposition, March 25, 2022, at 1.

[4] OCY sought aggravated circumstances against Father based upon his conviction of an equivalent crime in another jurisdiction. **See** 42 Pa.C.S. § 6302(3)(iv). The dependency petition alleges that, in addition to Father's continued disregard for safe sleeping techniques despite repeated warnings, he has a significant criminal history in the state of Illinois and the Commonwealth of Pennsylvania, including sexual offenses with a minor child victim under the age of 9 in Illinois, and two prior convictions for simple assault and criminal conspiracy-robbery in Pennsylvania. Dependency Petition at 4.

to offer no services to Mother and Father, and to proceed with the filing of a petition to terminate parental rights. 3/25/22 Order. Father filed both a notice of appeal and a concise statement of matters complained of on appeal on April 20, 2022.

On appeal, counsel has filed an *Anders* Brief in which he presents the following questions for our review:

> 1. Whether the Juvenile Court committed an abuse of discretion and/or error of law when it determined that [OCY] established, by clear and convincing evidence, that reasonable efforts to reunify were not necessary?
>
> 2. Whether the Juvenile Court committed an abuse of discretion and/or error of law when it determined that [OCY] established, by clear and convincing evidence, the grounds for a change in goal to adoption pursuant to 42 Pa.C.S. § 6351(f)?

*Anders* Brief at 3 (reordered for ease of discussion).

Before reaching the merits of this appeal, we must first address whether counsel's petition to withdraw and accompanying brief comply with the procedure outlined in *Anders* and related case law. *See In re J.D.H.*, 171 A.3d 903, 906 (Pa. Super. 2017) (holding that *Anders* procedure for withdrawal of court-appointed counsel applies in a dependency and adoption proceeding, even in the absence of an involuntary termination decree). In order to withdraw under *Anders*, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the *Anders* brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise

additional arguments that the appellant deems worthy of the court's attention.

*Id.* at 907 (quoting ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*); brackets omitted).

With respect to the third requirement, counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Id.* (quoting ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005)). Because a parent has a continuing right to counsel in dependency proceedings, an attorney seeking to withdraw in an appeal from an order establishing adoption as the placement goal is required to

> inform the parent of his or her right to counsel in any subsequent dependency or involuntary termination proceedings. Counsel must also inform the parent that, if he or she cannot afford counsel, he or she may contact the trial court in order to obtain new counsel. This information must be conveyed to the parent at the same time that counsel informs the parent of his or her other rights pursuant to ***Anders***[.]

*Id.* at 906-07.

Furthermore, the ***Anders*** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 907 (quoting ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009)).

In his petition to withdraw, counsel indicated that he had thoroughly reviewed the record and determined that there are no non-frivolous grounds for this appeal. Counsel sent a letter to Father advising him of his right to retain new counsel or proceed *pro se* and raise any additional issues he deemed worthy of this Court's attention.[5] Counsel's letter also advised Father of his right to appointed counsel in any subsequent dependency or termination proceeding and that he should contact the court to obtain new counsel if he could not afford it. ***See id.*** at 906-07. This letter was attached to counsel's petition for withdrawal, and it indicates that counsel provided Father with the petition to withdraw and ***Anders*** brief; counsel's certificates of service likewise demonstrate that the relevant filings were served on Father.

Counsel's amended brief contains a summary of the relevant procedural and factual history of this case, states his reasons for concluding that Father's appeal is frivolous and articulates relevant facts of record, controlling case law, and relevant statutes that have led to his conclusion that the appeal is frivolous.[6]

_____

[5] As of the date of this decision, Father has not filed a *pro se* brief with this Court, nor has privately retained counsel entered an appearance on Father's behalf.

[6] Counsel filed an Amended Brief on December 3, 2022 in response to this Court's Memorandum dated November 4, 2022 denying counsel's petition to
*(Footnote Continued Next Page)*

- 6 -

We thus conclude that counsel has complied with the procedural requirements for withdrawal, and we may therefore proceed to review the merits of this appeal, and "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *J.D.H.*, 171 A.3d at 908 (quoting *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015)).

In the *Anders* brief, counsel raises the issues of whether the trial court abused its discretion in its determination that reasonable efforts to reunify were not necessary and in establishing the goal of adoption.[7] With respect to reunification efforts, counsel identifies the primary questions as whether Father's sex offense, which occurred in 2008 when he was a juvenile, was too remote to be considered, whether he demonstrated his capacity for rehabilitation through his sex offender treatment, and whether he was given sufficient opportunity to improve his parenting abilities. *Anders* Brief at 11-12.

Where the court has found, as here, that aggravated circumstances exist, it must then determine whether reasonable efforts to prevent the need from removing the child from the home shall be made, and it "may end

_____

withdraw and directing counsel to file either a compliant *Anders* brief and petition to withdraw or an advocate's brief. *See In Interest of L.S.*, No. 433 WDA 2022 (Pa. Super. filed November 4, 2022), unpublished memorandum, 2022 WL 16707816.

[7] Father does not challenge the dependency adjudication of Child or the existence of aggravating circumstances.

reasonable efforts at its discretion." **See In re L.V.**, 127 A.3d 831, 839 (Pa. Super. 2015); **In re A.H.**, 763 A.2d 873, 878 (Pa. Super. 2000).

The trial court noted the testimony of OCY supervisor Rhiannon Bernardini, who performed the GPS investigation on March 7, 2022, when Father was present at the home, and spoke to the service providers who had been assisting the parents with parenting; Ms. Bernardini voiced OCY's concerns that Father and Mother were allowing the infant twins to sleep together, despite instructions not to do so, and that they were allowing them to sleep in a crib with boppy pillows and blankets. TCO at 4; N.T. at 14. The trial court also noted the testimony of Lisa Kobusinski, a senior family specialist at Project First Step, who was helping Mother with feeding after the birth of the twins; she stated that Father was present for only one of her five visits to the home, after having been told that he was required to be there, and he otherwise remained in the bedroom with the dogs while she was instructing Mother. TCO at 8; N.T. at 77, 80. The trial court also noted the testimony of Tiffany Thomas, a nurse home visitor, who stated that she tried to instruct and educate Father and Mother on safe sleeping and the dangers of utilizing incorrect sleeping techniques to no avail. TCO at 9; N.T. at 96.

At the hearing, the trial court set forth its reasoning for declining to offer services to Father, noting that the criminal allegations against Father were severe, and involved a female child; the trial court further found significant that Father was in the home, had knowledge that Mother had had children removed from her in the past due to her inability to care for them, and could

have stepped in to assist Mother, but chose instead to sit back and allow her to take over. N.T. at 138.

We find that the trial court properly relied on the witnesses' credible testimony regarding Father's unwillingness to receive instruction or to follow their guidance with regard to safe sleeping techniques and acted within its discretion in finding that no reunification services should be provided to Father, who had committed a sexual offense against a minor child.

With respect to the goal change of adoption, counsel notes in the *Anders* brief that Child's guardian *ad litem* stated at the adjudication hearing that she would not oppose the court deciding to offer services to Father for a short period of time, so long as they were provided wholly independently of Mother, and that such services could further the development of a bond between Father and Child and potential reunification. N.T. at 137; *Anders* Brief at 9-10.

We review decisions changing a placement goal for abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." *In re N.C.*, 909 A.2d 818, 822 (Pa. Super. 2006). We emphasize that, in determining whether a goal change is appropriate, the focus is on the child's best interests. *Id*. at 823 (noting that "[s]afety, permanency, and well-being of the child must take preference

over **all** other considerations, including the rights of the parents") (emphasis in original).

In its opinion, the trial court considered Father's adjudication for aggravated criminal sexual abuse of a child under the age of nine, while Father was under the age of seventeen, and the fact that his juvenile court petition specified he "knowingly placed his penis in the vagina" of the minor. TCO at 14; Exhibits 16, 17. The court determined that for those reasons, as well as Father's failure to participate in the services that he was offered, i.e., staying in the bedroom with the dogs while service providers were there to teach safe parenting, OCY was not required to make reasonable efforts for reunification as it pertained to Father and the goal of adoption was established. TCO at 14-15. We find no abuse of discretion in the trial court's determination to establish adoption as Child's permanency goal. We have explained in the context of involuntary termination of parental rights proceedings that, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006).

Accordingly, our independent review of the issues raised in the **Anders** brief demonstrates that they are frivolous. Moreover, our review of the record

does not reveal any non-frivolous issues overlooked by counsel.[8]  **See Flowers**, 113 A.3d at 1250.  Therefore, we grant counsel's petition to withdraw, and we affirm the 3/25/22 Order as to Father.

Petition to withdraw granted.  Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  01/10/2023

---

[8] Specifically, we detect no abuse of discretion in the trial court's determination in the 3/25/22 Order that Child is dependent.  Furthermore, the trial court appropriately determined that aggravated circumstances exist based upon Father's 2008 Illinois conviction for aggravated criminal sexual assault of a child under the age of nine, when Father was 16 years old. (42 Pa.C.S. § 6302(3)(ii),(iv); **In re R.J.T.**, 9 A.3d at 1190.)